ORIGINAL

FILED
DISTRICT COURT OF GUAM
AUG 11 2021 cms
JEANNE G. QUINATA
CLERK OF COURT

FILED
DISTRICT COURT OF GUAM
AUG 12 2021
JEANNE G. QUINATA
CLERK OF COURT

1 SHAWN N. ANDERSON
United States Attorney
2 Districts of Guam and the NMI
BENJAMIN K. PETERSBURG
3 Assistant United States Attorney
Sirena Plaza, Suite 500
4 108 Hernan Cortez Avenue
Hagåtña, Guam 96910
5 PHONE: (671) 472-7332
FAX: (671) 472-7215
6
Attorneys for the United States of America
7

8 IN THE UNITED STATES DISTRICT COURT

9 FOR THE TERRITORY OF GUAM

10 UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 19-00031

11 Plaintiff,

12 vs. | *Amended M*
**PLEA AGREEMENT**

13 THOMAS E. MARLER,

14 Defendant.

15 Plaintiff, United States of America, by and through Shawn N. Anderson, United States

16 Attorney for the Districts of Guam and the NMI, and Benjamin K. Petersburg, Assistant United

17 States Attorney for the Districts of Guam and the NMI, and Defendant THOMAS E. MARLER and

18 the Defendant's counsel, David J. Lujan, agree to the following Plea Agreement:

19 1. Guilty Plea and Maximum Statutory Penalties:

20 The Defendant, THOMAS E. MARLER, agrees to plead guilty to Counts 2, 4, and 5 of the

21 Superseding Indictment filed on May 21, 2020, charging the Defendant with Conspiracy to Restrain

22 Trade, in violation of 15 U.S.C. § 3, Money Laundering, in violation of 18 U.S.C. §§ 1957 and 2,

23 and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h).

24

PLEA AGREEMENT - 1

The Defendant, THOMAS E. MARLER, understands that Conspiracy to Restrain Trade in violation of 15 U.S.C. § 3 and Money Laundering, in violation of 18 U.S.C. §§ 1957 and 2, are Class C felony charges. The Defendant, THOMAS E. MARLER, also understands that the maximum statutory penalty for each offense of Conspiracy to Restrain Trade, in violation of 15 U.S.C. § 3, and Money Laundering, in violation of 18 U.S.C. §§ 1957 and 2, is not more than 10 years imprisonment; a fine not to exceed $1,000,000 for Conspiracy to Restrain Trade and a fine not to exceed $250,000 for Money Laundering; a term of supervised release of not more than 3 years; restitution; and a $100 special penalty assessment for each count.

The Defendant, THOMAS E. MARLER, understands that Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h) is a Class C felony charge. The Defendant, THOMAS E. MARLER, also understands that the maximum statutory penalty for Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h), is not more than 20 years imprisonment; a fine not to exceed $500,000; a term of supervised release of not more than 3 years; restitution; and a $100 special penalty assessment.

The Defendant, THOMAS E. MARLER, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2.    The Court's Role in Plea and Sentencing Procedure:

The Court is not a party to this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

TM
C.L.

1   The Defendant acknowledges that no promises of any type have been made to the Defendant
2   with respect to the sentence the Court will impose in this matter.  The Defendant understands that the
3   Court is required to consider the applicable sentencing guideline range, but may depart upward or
4   downward under the appropriate circumstances.

5   The Defendant also understands that should the sentencing judge decide not to accept any of
6   the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement
7   or a basis for withdrawing this plea of guilty.

8   The Defendant understands that the Court shall accept the Defendant's unconditional guilty
9   plea as long as it meets the requirements of Fed. R. Crim. P. 11(b).  The Court will therefore conduct
10  a limited inquiry to determine whether the Defendant's plea is knowing, voluntary and intelligent,
11  and has a sufficient factual basis.

12  3.    Waiver of Constitutional Rights:

13  The Defendant, THOMAS E. MARLER, understands that by entering this plea of guilty the
14  Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

15              (a).    The right to a jury trial;

16              (b).    The right to see, hear and question the witnesses;

17              (c).    The right to remain silent at trial;

18              (d).    The right to testify at trial; and

19              (e).    The right to compel witnesses to testify.

20  While the Defendant is waiving certain constitutional rights, the Defendant understands the
21  Defendant retains the right to be assisted through the sentencing and any direct appeal of the
22  conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot
23  afford to hire an attorney.  The Defendant also acknowledges that any pretrial motions currently
24  pending before the Court are waived.

PLEA AGREEMENT - 3

4. Elements of the Offense:

The United States and the Defendant agree that in order to convict the Defendant of

Conspiracy to Restrain Trade, in violation of 15 U.S.C. § 3, the United States would have to prove

beyond a reasonable doubt the following elements:

(a). First, beginning on or about November 26, 2013 and ending on or about June 10, 2015, there was an agreement between two or more persons to rig bids for project work pursuant to a cooperative agreement administered by the University of Guam in violation of 15 U.S.C. § 3;

(b). Second, the defendant, THOMAS MARLER, became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

(c). Third, the conspiracy affected trade or commerce in Guam, a Territory of the United States.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

PLEA AGREEMENT - 4

ABA-JI-CRIMANTI 3.C, ELEMENTS OF THE OFFENSE; Ninth Cir. Manual of Model Crim. Jury Instr. No. 8.20 (2010); 15 U.S.C. § 3

The United States and the Defendant further agree that in order to convict the Defendant of Money Laundering, in violation of 18 U.S.C. §§ 1957 and 2, the United States would have to prove beyond a reasonable doubt the following elements:

> (a).    First, the defendant, THOMAS E. MARLER, knowingly engaged or attempted to engage in a monetary transaction;
>
> (b).    Second, the defendant knew the transaction involved criminally derived property;
>
> (c).    Third, the property had a value greater than $10,000;
>
> (d).    Fourth, the property was, in fact, derived from wire fraud, a specific unlawful activity, in violation of 18 U.S.C. § 1343; and
>
> (e).    Fifth, the transaction occurred in the United States.

Model Crim. Jury Instr. 9th Cir. 8.150 (2021).

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h), the United States would have to prove beyond a reasonable doubt the following elements:

> (a).    First, beginning at least as early as November 2014 and ending on or about June 11, 2015, there was an agreement between two or more persons to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i);
>
> (b).    Second, the defendant, THOMAS MARLER, became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and
>
> (c).    ~~Third, one of the members of the conspiracy performed at least one overt act on or after November 2014 for the purpose of carrying out the conspiracy.~~ *C·L·  TM  BP /M*
>
> A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

PLEA AGREEMENT - 5

*TM  C·L·*

1    For a conspiracy to have existed, it is not necessary that the
conspirators made a formal agreement or that they agreed on every
2    detail of the conspiracy. It is not enough, however, that they simply
met, discussed matters of common interest, acted in similar ways, or
3    perhaps helped one another. You must find that there was a plan to
commit at least one of the crimes alleged in the indictment as an object
4    of the conspiracy with all of you agreeing as to the particular crime
which the conspirators agreed to commit.

5
        One becomes a member of a conspiracy by willfully
6    participating in the unlawful plan with the intent to advance or further
some object or purpose of the conspiracy, even though the person does
7    not have full knowledge of all the details of the conspiracy.
Furthermore, one who willfully joins an existing conspiracy is as
8    responsible for it as the originators. On the other hand, one who has
no knowledge of a conspiracy, but happens to act in a way which
9    furthers some object or purpose of the conspiracy, does not thereby
become a conspirator. Similarly, a person does not become a
10   conspirator merely by associating with one or more persons who are
conspirators, nor merely by knowing that a conspiracy exists.

11
        An overt act does not itself have to be unlawful. A lawful act
12   may be an element of a conspiracy if it was done for the purpose of
carrying out the conspiracy. The government is not required to prove
13   that the defendant personally did one of the overt acts.

14   Ninth Cir. Manual of Model Crim. Jury Instr. No. 8.20 (2010).

15   5.    Factual Basis and Statement of Facts:

16       The United States and the Defendant stipulate and agree that the following facts are accurate;

17   that the United States could prove these facts beyond a reasonable doubt at trial; and these facts

18   constitute an adequate factual basis for THOMAS E. MARLER's guilty plea.

19       The Defendant was born in 1959, and is a citizen of the United States.

20       Beginning at least in 2014, Defendant THOMAS E. MARLER ("MARLER") conspired with

21   JOHN HOBART LAWRENCE ("BART LAWRENCE"), JAYANIKA LAWRENCE and others to

22   rig bids for federally-funded project work pursuant to cooperative agreements between the

23   Department of the Navy and the University of Guam ("UOG"). MARLER and BART LAWRENCE

24

1  had been longtime friends and associates on Guam, and BART LAWRENCE'S wife worked for

2  MARLER at UOG.

3       MARLER was a Professor at UOG as well as a Principal Investigator for certain federally

4  funded cooperative agreements at UOG.  As the Principal Investigator, MARLER's duties included

5  bidding out and awarding project work in compliance with UOG's procurement process.  The UOG

6  procurement process required MARLER to solicit bids for grant work from at least three companies

7  and to award the project to the lowest responsive bidder.  During his time as a Principal Investigator,

8  MARLER awarded projects to Isla Paraiso, a company nominally owned by MARLER's wife, L.J.,

9  but in fact operated and controlled by MARLER.  In order to make project awards to Isla Paraiso

10  appear legitimate, MARLER produced fraudulent bids from other companies with prices higher than

11  the Isla Paraiso bid, ensuring that Isla Paraiso was awarded the grant work.

12       In approximately 2014, MARLER approached BART LAWRENCE about BART

13  LAWRENCE'S daughter, JAYANIKA LAWRENCE, doing federally-funded project work for

14  UOG.  BART LAWRENCE and JAYANIKA LAWRENCE then started an environmental

15  consulting company called Sansar Environmental Consulting ("SANSAR").  BART LAWRENCE

16  and JAYANIKA LAWRENCE created business letterhead and worked together on project bids

17  submitted to MARLER for UOG-administered project work.

18       Also in 2014, the Defendant, THOMAS E. MARLER approached BART LAWRENCE and

19  asked if MARLER could use SANSAR as one of the three required bids under the UOG

20  procurement rules in order to award the work to his company, Isla Paraiso.  MARLER told BART

21  LAWRENCE that in order to complete the project work, he wanted to use Isla Paraiso and

22  SANSAR. BART LAWRENCE agreed to allow MARLER to use SANSAR in order to rig the bids

23  for project work and ensure the project work was awarded to Isla Paraiso and SANSAR.  BART

24  LAWRENCE knew that MARLER controlled the selection process for the UOG-administered

PLEA AGREEMENT - 7

1 cooperative agreements with the Department of the Navy and assumed that MARLER would create

2 fictitious SANSAR bids in order to make the procurement awards look legitimate. MARLER did in

3 fact create and submit fictitious bids for SANSAR and other Guam-based companies in order to

4 make the award of federally-funded project work to SANSAR and Isla Paraiso appear legitimate.

5         On or about July 8, 2014, the Defendant, THOMAS E. MARLER, caused a check to be

6 written drawn on the Bank of Guam business checking account of Isla Paraiso in the amount of

7 $24,000.00 and payable to THOMAS E. MARLER. MARLER knew that the funds in the Isla

8 Paraiso checking account were the proceeds of wire fraud, in violation of 18 U.S.C. § 1343. On or

9 about July 8, 2014, MARLER caused this check to be deposited into a separate Bank of Guam

10 savings account he controlled. In so doing, MARLER engaged in a monetary transaction involving

11 criminally derived property of a value greater than $10,000.00 in violation of 18 U.S.C. §§ 1957 and

12 2.

13         Beginning in November of 2014 and continuing to on or about June 11, 2015, the Defendant,

14 THOMAS E. MARLER, conspired with JAYANIKA LAWRENCE and others, in the District of

15 Guam and elsewhere, to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and

16 1956(a)(1)(B)(i). The Defendants caused the proceeds of wire fraud to be wired to JAYANIKA

17 LAWRENCE'S personal bank account. Then, knowing that the funds represented the proceeds of

18 some form of unlawful activity and at the direction of MARLER, JAYANIKA LAWRENCE

19 transferred the proceeds to a business account in the name of SANSAR, and N.D. withdrew proceeds

20 in cash from the SANSAR bank account and distributed them to MARLER and others. These

21 transactions were designed in whole or in part to conceal and disguise the nature, location, source,

22 ownership, or control of the proceeds of wire fraud.

23         This statement of facts is made for the limited purpose of supporting the Defendant's guilty

24 plea. It therefore does not contain all facts relating to the underlying criminal conduct. This

PLEA AGREEMENT - 8

statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

6. <u>Waiver of Inadmissibility of Statements</u>:

The Defendant agrees to waive the inadmissibility of statements made in the course of plea discussions with the United States, pursuant to Fed. R. Crim. P. 11(f). This waiver shall apply if the Defendant withdraws this guilty plea or breaches this Plea Agreement. The Defendant acknowledges that any statements made by the Defendant to law enforcement agents in the course of plea discussions in this case would be admissible against the Defendant in the United States's case-in-chief if the Defendant were to withdraw or breach this Plea Agreement.

7. <u>The United States Agrees</u>:

(a.) <u>Dismissal(s)</u>:

At the time of sentencing, the United States agrees to move to dismiss Counts 1 and 3 of the Superseding Indictment, which charge the Defendant with Wire Fraud, in violation of 18 U.S.C. § 1343 and Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 and 1343.

(b.) <u>Not to File Additional Charges</u>:

The United States Attorney's Office for the Districts of Guam and the NMI agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Superseding Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

8. <u>United States Sentencing Guideline Calculations</u>:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's

PLEA AGREEMENT - 9

applicable sentencing guideline range at the time of sentencing. In determining a sentence, the Court is obligated to consider that range, possible departures or variances under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a).

(a.)     Base Offense Level:

The United States and the Defendant agree that the base offense level for Conspiracy to Restrain Trade is 12. See U.S.S.G. § 2R1.1.

The United States and the Defendant agree that the base offense level for Money Laundering is 12. See U.S.S.G. §§ 2S1.1(a)(2) and 2B1.1(b)(1)(C).

The United States and the Defendant agree that the base offense level for Conspiracy to Commit Money Laundering is 14. See U.S.S.G. §§ 2S1.1(a)(2) and 2B1.1(b)(1)(D).

(b.)     Specific Offense Characteristics:

The United States and the Defendant also agree and stipulate that the base offense level for Conspiracy to Restrain Trade is increased by an additional one (1) level because Defendant's "conduct involved participation in an agreement to submit non-competitive bids." See U.S.S.G. §2R1.1(b)(1).

The United States and the Defendant also agree and stipulate that the base offense level for Money Laundering is increased by an additional one (1) level because Defendant was convicted under 18 U.S.C. § 1957. See U.S.S.G. §2S1.1(b)(2)(A).

The United States and the Defendant also agree and stipulate that the base offense level for Conspiracy to Commit Money Laundering is increased by an additional two (2) levels because Defendant was convicted under 18 U.S.C. § 1956. See U.S.S.G. §2S1.1(b)(2)(B).

//

//

//

(c.) <u>Role in the Offense</u>:

Based upon the Defendant's role in the offense, as an organizer, leader, manager or supervisor, the United States and the Defendant agree the Defendant's base offense should be increased by two (2) levels. <u>See</u> U.S.S.G. § 3B1.1(c).

(d.) <u>Multiple Count Analysis</u>:

The United States and the Defendant agree and stipulate that the three offenses of conviction are grouped and there is no increase in the total offense level for multiple counts. <u>See</u> U.S.S.G. §§ 3D1.2(d) and 3D1.4.

(e.) <u>Acceptance of Responsibility</u>:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than August 6, 2021, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $300 mandatory special penalty assessment to the Clerk of Court for the District of Guam, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

PLEA AGREEMENT - 11

1    Therefore, the United States and the Defendant agree that the Defendant's final adjusted
2    offense level would be 13.

3          (f.)     Criminal History:

4          The United States and the Defendant understand that the Defendant's criminal history
5    computation is tentative and that ultimately the Defendant's criminal history category will be
6    determined by the Court after review of the Presentence Investigative Report. The United States and
7    the Defendant have made no agreement and make no representations as to the criminal history
8    category, which shall be determined after the Presentence Investigative Report is completed.

9    9.    Departures:

10         The Defendant and the United States understand and acknowledge that, at sentencing, they
11   are free to make whatever sentencing recommendations for whatever reasons they deem are
12   appropriate. That is, the United States and the Defendant are free to seek an upward or a downward
13   departure from the applicable sentencing guideline range.

14   10.   Substantial Assistance:

15         The United States also agrees to furnish the Defendant an opportunity to provide "substantial
16   assistance," that is, information and assistance in the investigation and prosecution of others. The
17   Defendant agrees to meet with federal and state law enforcement agents in an attempt to assist them
18   in obtaining information that would form the basis of a motion for correction or reduction of
19   sentence to be filed pursuant to U.S.S.G. §5K1.1 and/or 18 U.S.C. § 3553(e). The Defendant
20   understands that whether any such information amounts to substantial assistance is a determination
21   left to the United States Attorney's Office.

22         (a.)    The Defendant must provide information and assistance in the federal or state
23   investigation and prosecution of others who have the same as or greater involvement than the
24   Defendant's involvement in violations of the law.

PLEA AGREEMENT - 12

C. L.
TM

(b.)     The Defendant understands and agrees to participate in full debriefings by federal and local investigative agencies about the Defendant's knowledge of illegal conduct, at times and places to be decided by these agencies.  The Defendant agrees to provide complete, accurate, and truthful information during the debriefings.  Such debriefings may involve the use of a polygraph, if requested by the agencies.  It is understood that the Defendant may have an attorney present at the debriefings.  The Defendant also agrees to participate in any future court proceeding involving any named or unnamed coconspirators and any other persons involved in criminal activity, by testifying completely and truthfully.  Such court proceedings include grand jury proceedings, trials, and sentencing hearings.

(c.)     The Defendant agrees that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if the Defendant fails to provide truthful, complete and honest information during debriefings, testimony before the grand jury, or any court proceedings, or if the Defendant fails a polygraph examination.  The determination whether the Defendant has failed a polygraph examination shall be made by the Court.

(d.)     The Defendant understands this agreement does not protect him from prosecution for perjury, obstruction of justice, or any other offense should the Defendant commit any crime during the Defendant's cooperation under this agreement.

(e.)     The Defendant understands further that if the United States determines that the Defendant has provided "substantial assistance" and a motion is made pursuant to U.S.S.G. §5K1.1, the Court will be free to impose any sentence, even one below the applicable Guidelines sentencing range.  Furthermore, if a motion is also made pursuant to 18 U.S.C. § 3553(e), the Court will be free to impose a sentence below any statutory minimum.  If a "substantial assistance" motion is filed, both the United States and the Defendant will be free to make a specific recommendation with

PLEA AGREEMENT - 13

respect to any correction or reduction of sentence. It is understood that the United States will inform the sentencing judge about the timing and extent of the Defendant's cooperation.

(f.)    The Defendant understands that, if the United States files a motion indicating the Defendant has provided "substantial assistance," the appropriate reduction shall be determined by the Court for reasons including consideration of the following: (1) the Court's evaluation of the significance and usefulness of the Defendant's assistance, taking into consideration the United States' evaluation of the assistance rendered; (2) the truthfulness, completeness, and reliability of any information or testimony provided by the Defendant; (3) the nature and extent of the Defendant's assistance; (4) any injury suffered, or any danger or risk of injury to the Defendant or the Defendant's family resulting from the Defendant's assistance; and (5) the timeliness of the Defendant's assistance. See U.S.S.G. §5K1.1(a)(1)-(5).

11.    Incarceration:

(a.)    Length of Imprisonment:

The United States and the Defendant agree to recommend that the Court impose a sentence at the low end of the applicable sentencing guideline range.

12.    Criminal Fine:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

13.    Supervised Release:

The United States and the Defendant agree to recommend that the Court impose a 2-year term of supervised release to include the following special conditions, in addition to the standard conditions of supervised release: (1) that the Defendant provide financial information, provide copies of Federal income tax returns and allow credit checks, at the direction of the Probation Officer; (2) that the Defendant shall disclose all assets and liabilities to the Probation Officer and

PLEA AGREEMENT - 14

C.L.
TM

1  shall not transfer, sell, give away, or otherwise convey or secret any asset, without the advance

2  approval of the Probation Officer; and (3) that the Defendant be prohibited from incurring any new

3  debt, opening new lines of credit, or enter any financial contracts or obligations without the prior

4  approval of the Probation Officer.

5  14.  Restitution:

6  The parties hereby stipulate and agree that there is no restitution due.

7  15.  Mandatory Special Penalty Assessment:

8  The Defendant agrees to pay the $300 mandatory special penalty assessment to the Clerk of

9  Court for the District of Guam, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall

10  provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

11  16.  Payments While Incarcerated:

12  If the Defendant lacks the financial resources to pay the monetary obligations imposed by the

13  Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the

14  Bureau of Prisons' Inmate Financial Responsibility Program.

15  17.  Financial Disclosure Obligations:

16  Defendant agrees to submit to the United States Attorney's Office for the Districts of Guam

17  and the NMI, within three weeks of the execution of this plea agreement, a complete, accurate and

18  truthful financial statement and accompanying releases, in a form it provides and as it directs.

19  Defendant agrees to disclose all assets in which he has any interest or over which he exercises

20  control, directly or indirectly, including those held by a spouse, nominee or other third party.

21  Defendant authorizes the United States Attorney's Office for the Districts of Guam and the NMI to

22  obtain a credit report on him to evaluate his ability to satisfy any financial obligation imposed by the

23  Court.

24

PLEA AGREEMENT - 15

Defendant understands and agrees that any monetary penalties imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States, pursuant to 18 U.S.C. § 3613. Defendant understands that, by law, interest accrues on any remaining balance of the debt. Defendant agrees not to dissipate assets. If Defendant is financially unable to immediately pay any monetary penalties in full, Defendant agrees: (a) to cooperate with the United States Attorney's Office; (b) to provide updated financial statements upon request by the United States Attorney's Office and to keep the office advised about Defendant's current address; and (c) for his debt to be placed on the Treasury Offset Program and any tax refund/rebate offset program existing in his state of residency. Defendant understands that any funds captured by an offset program will be paid towards his monetary penalties, but does not relieve him of his obligation to pay the monetary penalties in full.

18. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

19. <u>Appeal Rights</u>:

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court. Defendant hereby expressly waives his right to appeal his conviction. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

20. <u>Hyde Amendment Waiver</u>:

PLEA AGREEMENT - 16

The Defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

21.    Integration Clause:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Districts of Guam and the NMI, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Districts of Guam and the NMI.

Shawn N. Anderson
United States Attorney

_____          _8/5/2021_
Benjamin K. Petersburg                    Date
Assistant U.S. Attorney


I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am

PLEA AGREEMENT - 17

satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.


_Thomas E. Marler_                                    _8/3/2021_
Thomas E. Marler                                      Date
Defendant

      I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.


_Clyde Lemons Jr._                                    _8/3/2021_
David J. Lujan                                        Date
Attorney for the Defendant

PLEA AGREEMENT - 18